[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-10911
Non-Argument Calendar

_____

D.C. Docket No. 4:13-cr-00102-RH-CAS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ISAAC DILLARD WILSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(September 30, 2016)

Before MARCUS, WILSON and ROSENBAUM, Circuit Judges.

PER CURIAM:

After a conditional guilty plea, Isaac Dillard Wilson appeals his conviction
and sentence for possession of a firearm by a convicted felon, in violation of
18 U.S.C. §§ 922(g) and 924(a)(2) .  On appeal, he argues that: (1) the district

court erred in denying his motion to suppress on the grounds that the officer who arrested him lacked probable cause to initiate his traffic stop, and the officer unreasonably prolonged the traffic stop to conduct a dog sniff; and (2) Wilson's guideline sentence was calculated improperly.  After thorough review, we affirm.

First, we are unpersuaded by Wilson's claims that the district court erred in denying his motion to suppress.  We review a district court's denial of a motion to suppress evidence as a mixed question of law and fact.  United States v. Lewis, 674 F.3d 1298, 1302 (11th Cir. 2012).  Rulings of law are reviewed de novo, while the district court's findings of fact are reviewed for clear error, in the light most favorable to the prevailing party below.  Id. at 1302-03.  We may affirm the denial of a motion to suppress on any ground supported by the record.  United States v. Caraballo, 595 F.3d 1214, 1222 (11th Cir. 2010).

A traffic stop is a seizure within the meaning of the Fourth Amendment, which protects against "unreasonable searches and seizures."  Delaware v. Prouse, 440 U.S. 648, 653 (1979); U.S. Const. amend. IV.  To satisfy constitutional concerns, a traffic stop requires either probable cause to believe a traffic violation occurred or reasonable suspicion of criminal activity.  United States v. Harris, 526 F.3d 1334, 1337 (11th Cir. 2008).  We view the existence of probable cause or reasonable suspicion from the standpoint of an objectively reasonable police officer.  United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003).

An unreasonable mistake of law cannot provide the basis for probable cause. See Heien v. North Carolina, 574 U.S. ___, 135 S. Ct. 530, 539 (2014). However, a seizure is lawful when facts known to the officer give probable cause, even if the officer's subjective intent does not give probable cause. See Devenpeck v. Alford, 543 U.S. 146, 154-155 (2004). In Devenpeck, an officer arrested an individual for tape recording his conversation with the officer -- conduct the officer erroneously believed to be unlawful. Id. at 150, 152. However, the arresting officer also suspected that the arrested individual was impersonating a police officer; he simply chose not to charge the individual with that offense as a matter of policy against stacking charges. Id. at 150. The Supreme Court explained that when the circumstances, viewed objectively, would justify a detention, the officer's subjective reason for the detention will not invalidate it. See id. at 153.

When two views of the evidence are permissible, the fact finder's choice between them cannot be clearly erroneous. United States v. De Varon, 175 F.3d 930, 945 (11th Cir. 1999) (en banc). Whether a witness was credible is "typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002). We must accept the version of events adopted by the district court

3

"unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." Id. (quotation omitted).

In this case, Tallahassee Police Officer Patrick Coney had probable cause to initiate the traffic stop. While Coney's belief that Wilson had made an illegal turn constituted an unreasonable mistake of law and could not provide probable cause to conduct the stop, Officer Coney also testified that he observed Wilson exceeding the speed limit. Coney added that he would have pulled Wilson over for speeding even if he had not believed that the turn was illegal, but that his typical practice is to write only one ticket, even when there are multiple violations. Further, in a supplemental report drafted by Coney, the officer made no mention of Wilson exceeding the speed limit, but he did use the phrase "high rate of speed." Coney explained that he would not have used that phrase unless he believed that Wilson was actually speeding. The district court credited all of Coney's testimony, found that Coney had witnessed Wilson speeding, and that Coney had probable cause to believe that Wilson was speeding.

Wilson claims that certain factors cast doubt on Officer Coney's observation that he was speeding -- including that Coney made the estimate at night, that he decided not to cite Wilson for speeding, that he was moving while making the estimate, and that his estimate of the time it took Wilson to cross the intersection was too quick -- since there was no corroboration of Wilson's speed. However,

4

Officer Coney testified that he was radar certified, had practiced a number of visual estimates of vehicle speed in 2010, and was generally accurate in his estimates, and that using radar on traffic patrol every day involved an element of guessing speeds, which was a sort of training. In addition, we have never held that an officer's visual observation of a motorist's speed cannot provide probable cause. In fact, other courts have held that visual estimation of speed can provide the basis for probable cause. See United States v. Ludwig, 641 F.3d 1243, 1247 (10th Cir. 2011) (persuasive authority); United States v. Gaffney, 789 F.3d 866, 870 (8th Cir. 2015) (persuasive authority). Finally, we cannot say that Coney's testimony was "contrary to the laws of nature," or so improbable that no reasonable fact finder could accept it. See Ramirez-Chilel, 289 F.3d at 749.

Since Officer Coney provided plausible testimony, the court's acceptance of it could not be clearly erroneous. See De Varon, 175 F.3d at 945. Accordingly, we affirm the district court's determination that the traffic stop was lawful because Officer Coney had probable cause to believe that Wilson was speeding. Further, because Coney had probable cause to believe Wilson had committed a traffic violation, the officer's mistake of law regarding Wilson's turn did not render the stop unlawful. See Devenpeck, 543 U.S. at 154-155 (2004); see also Harris, 526 F.3d at 1337.

5

Nor do we agree with Wilson's claim that the officer unreasonably prolonged the traffic stop to conduct a dog sniff. An officer's actions during a traffic stop must be reasonably related in scope to the circumstances that justified the stop. United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001). However, investigations falling outside that scope do not render the stop unlawful, as long as the investigation does not measurably extend the duration of the stop. United States v. Griffin, 696 F.3d 1354, 1361 (11th Cir. 2012). Conversely, a traffic stop becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission. Rodriguez v. United States, 575 U.S. ___, 135 S. Ct. 1609, 1612 (2015). A dog sniff that does not unreasonably prolong the traffic stop is not a search subject to the Fourth Amendment, and the Supreme Court has therefore rejected the notion that a traffic stop becomes unlawful based on the mere act of a dog sniff that was not supported by reasonable suspicion. Illinois v. Caballes, 543 U.S. 405, 408-09 (2005).

We've said that when all computer background checks have been performed, the citation is written, and the police officer returns the driver's license, the traffic violation investigation is complete and the driver is free to go. See United States v. Boyce, 351 F.3d 1102, 1106-07 (11th Cir. 2003). However, we've also cautioned that "[r]igid time limitations and bright-line rules" are inappropriate to determine reasonableness. Purcell, 236 F.3d at 1279. Rather, we look to the totality of the

6

circumstances when determining whether a traffic stop was a reasonable seizure. Id.; see also United States v. Hernandez, 418 F.3d 1206, 1212 n.7 (11th Cir. 2005).

When an officer issues a warning citation during a traffic stop, the stop is not unreasonably prolonged if the officer takes time to explain the citation to the motorist. Cf. United States v. Harris, 928 F.2d 1113, 1117 (11th Cir. 1991) (holding that an officer's momentary detention after issuing a warning citation did not violate the Fourth Amendment). During a lawful traffic stop, an officer may order the occupants to exit the vehicle. United States v. Spoerke, 568 F.3d 1236, 1248 (11th Cir. 2009).

Here, the dog sniff did not violate the Fourth Amendment because it occurred during the course of a lawful traffic stop. As the record reveals, the canine unit arrived just after Officer Coney initiated the stop, while Coney was engaged in the procedures reasonably necessary for the completion of its purpose -- issuing a warning citation to Wilson. The dog sniff occurred while he was explaining the citation, a task that was reasonably related to the purpose of the stop. Cf. Harris, 928 F.2d at 1117. Officer Coney testified that he prefers that people exit the car for officer safety while he explains their ticket, which is not unlawful. Spoerke, 568 F.3d at 1248. Thus, although the dog sniff was unrelated to the initial traffic stop, it did not render the stop unlawful, because it did not measurably extend the duration of the stop. See Griffin, 696 F.3d at 1361.

7

Likewise, the dog sniff itself was lawful, because a dog sniff that does not unreasonably prolong a traffic stop is not a search subject to the Fourth Amendment.  See Caballes, 543 U.S. at 408-09.  We, therefore, affirm the district court's finding that the dog sniff occurred during the reasonable course of a lawful traffic stop.

Finally, we reject Wilson's claim that his Guideline sentence was calculated improperly.  For starters, when the district court says that it would have imposed the same sentence regardless of its decision on a particular Sentencing Guidelines issue, any error in deciding that Guidelines issue is harmless because it "had no effect on" the reasonable sentence imposed.  United States v. Overstreet, 713 F.3d 627, 639 n.15 (11th Cir. 2013).  Moreover, in this circuit, the vagueness doctrine applied by the Supreme Court in Johnson v. United States, 135 S. Ct. 2551 (2015), is inapplicable to the advisory Guidelines.  United States v. Matchett, 802 F.3d 1185, 1195-96 (11th Cir. 2015).  In Matchett, we held that the holding in Johnson is limited to criminal statutes that define elements of a crime or fix punishments. Id. at 1194.

Because Wilson's sentence was enhanced pursuant to the Sentencing Guidelines -- which are not subject to Fifth Amendment vagueness challenges, see id. at 1195-1196 -- Wilson's claim fails.  Furthermore, even if Johnson did apply to the Sentencing Guidelines, the use of the residual clause would constitute harmless

8

error.  As the record shows, the district court said that it would have imposed the same sentence regardless of the calculation at issue, observing that "[e]ven if I had taken the guideline range down to 77 to 96 . . . I would impose a 10-year sentence. I think the sentence needs to be 10 years.  That's the statutory maximum, and it needs to be that long."  Thus, any error in the guidelines calculation "had no effect on" the reasonable sentence the district court imposed.  See Overstreet, 713 F.3d at 639 n.15.  And, Wilson does not argue that his sentence was substantively unreasonable.  Accordingly, we affirm Wilson's sentence as well.

**AFFIRMED**.